UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| CHAD E. SHOFNER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 0:20-CV-23-KKC-HAI |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| J. DAVID GREEN, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

*** *** *** ***

On March 9, 2020, the Court received a petition for federal habeas relief under 28 U.S.C. § 2254 from state prisoner Chad Eric Shofner, accompanied by a memorandum in support. D.E. 1. Shofner also moved for leave to proceed *in forma pauperis*. D.E. 3. Because Shofner did not provide the required documentation, the Court entered a Recommendation that the *in forma pauperis* motion be denied. D.E. 5. On April 10, 2020, the Court received the filing fee from Shofner, which effectively rendered moot his motion to proceed *in forma pauperis*. D.E. 6. Even though the Court's previous Recommendation remains pending, the Court now conducts a preliminary review in the interest of efficiency. *See* Rule 4 of the Rules Governing Section 2254 Cases.

The Court recognizes that Shofner is proceeding *pro se*, without the assistance of an attorney, and thus construes his petition liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985).

## I. Background

According to his petition, Shofner pleaded guilty in 2002 to two counts of murder and one count of kidnaping. D.E. 1 at 1. He was sentenced to "concurrent sentences of life imprisonment without the possibility of parole for the two murders and twenty years imprisonment for the kidnapping." *Shofner v. Comm.* ("*Shofner I*"), 149 S.W.3d 401, 402 (Ky. 2002).

The Kentucky Court of Appeals described the background as follows:

> It is undisputed that on November 26, 2001, appellant shot and killed Michael Appleby and Darlene Appleby at their residence in Taylor County, Kentucky. Appellant's estranged wife, Jennifer Shofner (now Jennifer Caffee), was having an affair with Michael and was living with him at the time of the murders. Darlene was Michael's mother. After killing Michael and Darlene, appellant kidnapped Jennifer.
>
> Appellant was indicted upon two counts of capital murder (Kentucky Revised Statutes (KRS) 507.020) and upon one count of kidnapping (KRS 509.040). Appellant eventually entered a guilty plea to all charges without the benefit of a plea bargain from the Commonwealth. He also agreed to waive jury sentencing. The parties agreed that the trial court would sentence appellant without a jury and that all sentences would be available, including the death penalty. At the sentencing hearing, the Commonwealth introduced evidence that the crimes were premeditated and offered evidence that appellant previously stated he was going to kill Michael and Jennifer. For the defense, appellant testified that he did not go to the residence intending to kill anyone and that he only took the rifle for self-protection. Appellant stated that he shot Michael in self-defense and shot Darlene accidentally. Multiple witnesses were called to testify as to appellant's upbringing, relationships, and social interactions. On October 31, 2002, the circuit court sentenced appellant to two terms of life imprisonment without the possibility of parole. These terms were ordered to run concurrently. Appellant's direct appeal was affirmed by the [Kentucky] Supreme Court[.]

*Shofner v. Comm.* ("*Shofner II*"), No. 2006-CA-98-5-MR, 2007 WL 2894929, at *1 (Ky. Ct. App. Oct. 5, 2007).

Shofner moved for post-conviction relief. *Shofner II* at *1. He argued that "trial counsel was ineffective for failing to introduce evidence during the sentencing hearing showing the depth

2

of Jennifer's alleged manipulation and that such manipulation constituted mitigating evidence of extreme emotional distress." *Id*. The trial court conducted an evidentiary hearing and denied relief. *Id*. at *2. One of the witnesses was Jennifer, who testified, among other things, that Shofner had threatened to kill her. *Id*. The trial court determined that, had the additional evidence been presented at Shofner's sentencing, it would have *increased* the likelihood of his receiving the death penalty. *Id*. The Court of Appeals also noted that "[b]oth victims died of gunshot wounds to the head, which at the very least indicated an intent on the part of [Shofner] to kill the victims." *Id*.

Years later, Shofner moved again for post-conviction relief, and this motion underlies the present habeas motion. Shofner argued he had "obtained newly discovered evidence in the form of telephone conversations with his former wife who was the only individual to have previously claimed that Petitioner acted with malice and intent, rather than defending himself against armed attack from one of the purported victims." D.E. 1 at 3; *see also Shofner v. Comm.* ("*Shofner III*"), No. 2017-CA-1526-MR, 2018 WL 4264902 (Ky. Ct. App. Sept. 7, 2018). He told the court "it was not until May 2016, that [he] was able to persuade Jennifer to talk truthfully to him on the telephone." *Shofner III* at *1. The trial court reviewed the transcript of the jail call and concluded that "at no point in any of the transcripts did Ms. Shofner make any admission about giving false testimony to any of the pertinent facts of the Defendant's conviction." *Id*. at *2. The trial court denied the post-conviction motion and Shofner moved to alter or amend the judgment. *Id*. At Shofner's request, the trial court then reviewed the audio recordings and declined to alter or amend its judgment. *Id*. Shofner appealed; the appellate court reviewed the records and audio recording and found no abuse of discretion. *Id*. at *3.

3

Shofner relies on the same recorded phone call as the basis of his federal petition. D.E. 1 at 5. He argues he is "actually innocent" of the murders and that his former wife misled investigators into believing Shofner acted "with malice, rather than self-defense." *Id*. To be clear, while Shofner admits he killed the two victims, he argues now that when he shot the victims in the head, he did so first in self-defense and then by accident. D.E. 1-1 at 2, 21. He also denies he kidnapped his wife. *Id*. at 4.

Under the "mailbox rule," Shofner filed his habeas petition on March 3, 2020. D.E. 1 at 15. The motion was untimely filed.

## II. Shofner's Petition Is Untimely

A one-year period of limitation applies to motions filed under 28 U.S.C. § 2254. 28 U.S.C. § 2244(d)(1). This statute provides that the limitations period begins to run at the latest of four dates, only two of which are potentially relevant here. First, subsection 2244(d)(1)(A) provides one year beginning on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" Second, subsection 2244(d)(1)(D) provides one year beginning on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Additionally, a "properly filed application for State post-conviction or other collateral review" tolls the limitations period while the properly filed application is pending. 28 U.S.C. § 2244(d)(2).

Based on public court records and the information contained in Shofner's § 2254 form application, his petition is untimely under both § 2244(d)(1)(A) and § 2244(d)(1)(D).

Judgment was entered on October 8, 2002. Shofner appealed. On November 18, 2004, the Kentucky Supreme Court affirmed his sentence. *Shofner I*, 149 S.W.3d 401 (Ky. 2002). The

federal Supreme Court's Rule 13 provides 90 days to petition for a writ of certiorari. That 90-day period ended on February 6, 2005. Because February 6 is a Sunday, Rule 30 extends the deadline to Monday, February 7, 2005. Sup. Ct. R. 30. Shofner's one-year statute of limitations under 28 U.S.C. § 2244(d)(1)(A) began to run on that date, February 7, 2005.

The clock ran for 24 days when, on March 3, 2005, Shofner filed a motion for relief under Kentucky Rule of Civil Procedure 11.42. This motion tolled the federal clock under 28 U.S.C. § 2244(d)(2). On October 4, 2007, the Kentucky Court of Appeals denied relief, and on May 14, 2008, the Kentucky Supreme Court denied discretionary review. *Shofner II*, No. 2006-CA-985-MR, 2007 WL 2894929 (Ky. Ct. App. Oct. 5, 2007). Following the Supreme Court's order, Shofner had another 90-day period in which he could have petitioned the federal Supreme Court for certiorari. This 90-day period expired on August 12, 2008, and the clock began to run again.

Shofner at this point had 341 days left on his federal habeas clock. Those 341 days expired on July 19, 2009. That day was a Sunday, so the deadline rolled over to the next day, Monday, July 20, 2009. This was the date on which Shofner's one-year deadline expired under 28 U.S.C. § 2244(d)(1)(A). Under this subsection, Shofner's federal habeas petition was filed over eight years and eight months too late.

Shofner may argue that his statute of limitations should be governed by § 2244(d)(1)(D), which provides one year beginning on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." He states on his habeas form that

> after approximately fifteen (15) years of incarceration [] Petitioner was able to convince his former wife to discuss key points of November 26, 2001, and concede, if not plainly admit, to her manipulation of police and prosecutors related to her fraudulently maintaining Petitioner as the aggressor at the Appleby

5

> residence, when the truth was that Petitioner was confronted with an armed Michael Appleby who became physically threatening when Petitioner arrived at the Appleby residence, at the request of Jennifer, to pick her up and attempt to repair their marriage.

D.E. 1 at 13-14. As noted, this conversation was part of a jail phone call, which was recorded.

The phone call occurred on May 8, 2016. D.E. 1-1 at 10. It may be that it took several days for Shofner to obtain the recording of the phone call and create transcripts. However, without a doubt, Shofner knew the *contents* of the phone call on the day it occurred. The contents of the phone call—generously construed—would be the "factual predicate" supporting the claims in his current federal habeas petition, which triggers the statute of limitations under 28 U.S.C. § 2244(d)(1)(D).[1] Accordingly, Shofner's new one-year deadline under § 2244(d)(1)(D) began to run on the date of the jail call, May 8, 2016.

Three hundred fifty-eight days later, on May 1, 2017, Shofner filed a motion for relief under Kentucky Rule of Civil Procedure 60.02, which tolled the federal habeas clock under § 2244(d)(2). In this motion, like his current federal motion, Shofner argued that the recorded phone call with his wife constituted evidence that his convictions were fraudulently obtained. The motion was denied, and on September 7, 2018, the Kentucky Court of Appeals upheld the trial court's denial of relief. *Shofner III*, No. 2017-CA-1526-MR, 2018 WL 4264902 (Ky. Ct. App. Sept. 7, 2018). On March 6, 2019, the Kentucky Supreme Court denied discretionary review. *Id.* This ruling triggered a third 90-day period for Shofner to petition for a writ of certiorari from the federal Supreme Court. That period expired on June 4, 2019, and the federal habeas clock began running again.

---

[1] It could be argued that the true "factual predicate" was Shofner's *own knowledge* of his actual innocence. In this case, the recorded phone call would have no bearing on his statute of limitations. The Court, construing the petition as generally as possible, assumes here for the sake of analysis that the phone call constituted a § 2244(d)(1)(D) "factual predicate."

6

As of June 4, 2019, Shofner's habeas clock under § 2244(d)(1)(D) had run for 358 days. Only seven days remained. His 365-day limitations period then expired on Tuesday, June 11, 2019. Shofner did not place his federal habeas petition in the mail until March 3, 2020. D.E. 1 at 15. This was 266 days late.

### III. Equitable Tolling

Despite his petition's untimeliness, Shofner argues

> he is actually, as well as factually innocent of murder, as well as kidnapping, (as Jennifer admits), and that therefore his particular case is controlled by equ[it]able tolling available via Holland v. Florida, 560 U.S. 631 (2010); House v. Bell, 547 U.S. 518 (2006); Schlup v. Delo 513 U.S. 298 (1995), and their progeny.

D.E. 1 at 14.

To the extent Shofner claims that his actual-innocence argument alone warrants equitable tolling, the Sixth Circuit has held that "constitutional concerns counsel in favor of upholding equitable tolling based on a credible claim of actual innocence." *Souter v. Jones*, 395 F.3d 577, 601 (6th Cir. 2005); *see also Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011). Obtaining this sort of tolling requires the petitioner to produce

> new facts [that] raise sufficient doubt about the petitioner's guilt to undermine confidence in the result of the trial. To establish actual innocence, a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. . . . [T]he actual innocence exception should remain rare and only be applied in the extraordinary case.

*Souter*, 395 F.3d at 590 (citations and quotation marks omitted).

However, some courts in this Circuit have held that *Souter*'s actual-innocence exception does not apply when the petitioner pleaded guilty. *Jones v. Brewer*, No. 19-13731, 2020 WL 1188881, at *4 (E.D. Mich. Mar. 12, 2020) ("Petitioner's guilty plea belies an actual innocence

claim."); *Carter v. Horton*, No. 2:18-CV-12287, 2019 WL 3997149, at *5 (E.D. Mich. Aug. 23, 2019) ("Any actual innocence exception to AEDPA's statute of limitations is particularly inapplicable here in light of Petitioner's guilty plea"), *certificate of appealability denied*, No. 19-2080, 2020 WL 1320642 (6th Cir. Feb. 7, 2020); *Reeves v. Cason*, 380 F. Supp. 2d 883, 885 (E.D. Mich. 2005) ("[The *Souter* exception] does not apply here, because Petitioner pleaded guilty to the offense for which he was convicted."); *see also Turner v. Skipper*, No. 18-CV-12286, 2019 WL 3388486, at *4 (E.D. Mich. July 26, 2019) (following *Reeves*), *certificate of appealability denied sub nom. Turner v. Burton*, No. 19-1966, 2020 WL 901446 (6th Cir. Feb. 7, 2020); *Patton v. United States*, No. 1:00-CR-389, 2006 WL 1305086, at *6 (N.D. Ohio May 10, 2006) (following *Reeves*).

This approach makes sense. In general, "a valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.'" *Class v. United States*, 138 S. Ct. 798, 805 (2018) (quoting *United States v. Broce*, 488 U.S. 563, 573-74 (1989)). "[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case." *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975). Any "attack on the sufficiency of the evidence that might have been produced at trial [is] clearly waived by [a] defendant's guilty plea." *United States v. Manni*, 810 F.2d 80, 84 (6th Cir. 1987). "[A] guilty plea admits all averments of fact in the indictment, cures all non-jurisdictional defects, waives all defenses, and relieves the prosecution from the duty of proving any facts." *United States v. Patton*, 173 F.3d 857 (6th Cir. 1999) (table) (citing *Tollett v. Henderson*, 411 U.S. 258, 260-67 (1973)).

On the other hand, the Sixth Circuit, in an unpublished opinion, stated, "A petitioner may claim actual innocence for the purposes of equitable tolling, even if his conviction was the result

8

of a plea." *Connolly v. Howes*, 304 F. App'x 412, 417 (6th Cir. 2008). However, the cases the Court cited for this proposition concern procedural default, not equitable tolling of the habeas statute of limitations. *Id.* There are also several district-court cases in this Circuit that apply *Souter* even when the petitioner pleaded guilty. *See, e.g.*, *Eads v. Bottom*, No. 6:13-CV-29-JMH-REW, 2014 WL 2742581, at *5 (E.D. Ky. June 12, 2014) (discussing the "analytical difficulties" in applying the *Shlup* standard in the case of a guilty plea); *Miles v. Ohio*, No. 1:09-CV-262, 2010 WL 5899288, at *4 (S.D. Ohio Mar. 11, 2010) (applying *Souter* when the petitioner had pleaded guilty, but finding he did not "meet his burden of establishing actual innocence"), *report and recommendation adopted*, 2011 WL 799847 (S.D. Ohio Mar. 2, 2011).

The District Judge could dismiss Shofner's petition as time-barred on the basis that the *Souter* exception (that allows tolling for actual innocence claims) does not apply when the petitioner was convicted by guilty plea.

In the alternative—if *Souter* applies in guilty-plea cases, the Court finds that Shofner has not satisfied the "high bar" of the *Shlup* standard to warrant tolling. As noted, the bare fact that Shofner pleaded guilty sets an even higher bar for his actual innocence claim. Like the defendant in *Hopkins*, Souter surely would have known from the beginning that his wife was lying about the circumstances of the killings. "Since he knew this information and still pled guilty, it is difficult for him to now argue that this evidence is new and is of such exculpatory value no reasonable juror could have convicted him because of it." *Hopkins v. Taylor*, No. 13-CV-76-GFVT, 2014 WL 4693630, at *3 (E.D. Ky. Aug. 26, 2014)

Even aside from this fact, Shofner's actual innocence claim does not warrant tolling because his new evidence does not show it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Souter*, 395 F.3d at 590

9

(quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). As the Kentucky courts pointed out, Shofner's wife's statements made during the jail call are not the sort of extraordinary and reliable evidence that warrant such rare relief. *See id.*

As previously noted, the trial court compared the transcripts of the jail call to Jennifer's testimony earlier in the case. The trial court found that "at no point in any of the transcripts did [Jennifer] make any admission about giving false testimony to any of the pertinent facts of the Defendant's conviction." *Shofner III* at *3. And "[n]othing gave the court reason to believe that Shofner 'is not guilty of the crimes for which he plead guilty.'" *Id.* The trial court reaffirmed this ruling after hearing the audio of the calls, and the Kentucky Court of Appeals affirmed. *Id.* at *2-4.

Shofner's habeas petition hinges entirely on the idea that the contents of the jail call undermine confidence in the verdict against him by guilty plea. The courts that read the transcripts and listened to the audio of the call found that Jennifer did not admit to giving false testimony and found nothing that would undermine the verdict. Even though this Court does not currently possess the trial record,[2] the findings of the state court deserve appropriate deference. Those Courts found that the jail calls failed to undermine their confidence in the verdict. How then could these same facts lead to a finding that no rational juror would have convicted Shofner beyond a reasonable doubt? Shofner has not met his burden of clearing the high bar of providing new facts that raise sufficient doubt about his guilt to undermine confidence in his judgment. Accordingly, this case does not warrant tolling under *Souter*.

The Court addresses another issue, that being Shofner's contention that his guilty plea was not knowing and voluntary. As the Court has already explained, a valid guilty plea

---

[2] Shofner's memorandum contains references to an attached appendix. But his motion form and memorandum were not accompanied by any attachments.

10

generally waives all challenges related to the sufficiency of the evidence. Perhaps sensing this problem, Shofner argues he was "compelled" to plead guilty, despite knowing he was innocent of murder and kidnapping.

> As was argued throughout Petitioner's State level litigation, while Petitioner did enter into an unconditioned guilty plea to capital offenses, **he was compelled to do so** as the prosecution, as well as trial court itself, blindly accepted, if not embraced lies, distortions, manipulations and various fraud, created and maintained by his then wife Jennifer, who skillfully made every individual involved in Petitioner's prosecution truly belie[ve] that he acted with intent, malice, and ill-will in purposely murdering both Michael and Darlene Appleby, while the cold truth is that Petitioner acted in self-defense with Michael Appleby and pure accident resulted in Darlene Appleby's death; thereby making Petitioner actually innocent of any capital crime requiring "intent".

D.E. 1-1 at 2 (emphasis added). He argues he was "compelled to enter into a guilty plea to capital crimes based solely upon lies, manipulations and suppression of facts caused by Petitioner's then wife, Jennifer, purposely providing false key material facts to all State authorities involved in Petitioner's prosecution, all of which caused Petitioner to plead guilty in exchange for LIFE Without Parole rather than to be tried before a jury and given a death sentence." *Id.*; *see also id.* at 25-26. His argument is that he had to plead guilty because everybody believed his wife's lies.

A court taking a guilty plea must satisfy itself that the plea is made knowingly, voluntarily, and intelligently. *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). This means that the defendant "understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Id.* at 378-79. When the trial court "has scrupulously followed the required procedure" during a plea colloquy, "the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1990) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). In such cases,

11

"absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, *a defendant's plea agreement consists of the terms revealed in open court*." *Id.*

As a threshold matter, Shofner nowhere argues the trial court did not conduct a proper plea colloquy. Accordingly, he must point to "extraordinary circumstances" suggesting that his plea was not knowing and voluntary.

Regarding these extraordinary circumstances, the Supreme Court has instructed that "misunderstanding, duress, or misrepresentation by others" may render invalid a plea colloquy that otherwise appears properly conducted. *Blackledge v. Allison*, 431 U.S. 63, 75 (1977). However, a defendant's "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Id.* at 74; *see also Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that a conclusory statement is insufficient to raise the issue of ineffective assistance of counsel).

Shofner does not satisfy these standards. All he offers are conclusory and self-serving statements that he had to plead guilty because everyone believed his wife and he did not expect anyone to believe him. He does not allege he was misled by his attorney or the court. His averments do not undermine his solemn declarations in open court at the time of his plea. Shofner's actual innocence claim is undermined by his sworn admission of guilt.

Finally, Shofner asserts that he is entitled to equitable tolling under *Holland v. Florida*, 560 U.S. 631 (2010). D.E. 1 at 14; D.E. 1-1 at   Under *Holland*, a petitioner is entitled to equitable tolling of the habeas statute of limitations if he proves (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented

12

timely filing. *Holland*, 560 U.S. at 649. The bar to equitable tolling is a high one. "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Jurado v. Burt*, 337 F.3d 638, 643 (6th Cir. 2003) (quoting *Graham-Humphreys v. Memphis Brookes Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)). The constraining external circumstance must be something "extraordinary," *id*., such as "egregious attorney misconduct," *Holland*, 560 U.S. at 634, or the movant's "profound mental incapacity," *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004).

Shofner only mentions *Holland* in passing on his motion form (D.E. 1 at 14) and makes no reference to it in his memorandum. He provides no evidence that he was pursuing his *federal* rights diligently during the federal limitations period. Nor has he identified an extraordinary circumstance that prevented him from timely filing a federal habeas petition. This is a garden-variety case of purportedly newly discovered evidence. Such cases are governed by the alternative statute of limitations at 28 U.S.C. § 2244(d)(1)(D), which has already been discussed. Shofner does not point to a single thing that prevented him from filing a federal petition between the May 8, 2016 phone call and June 11, 2019, when his federal deadline expired.

### IV. Conclusion

Under 28 U.S.C. § 2243, "the district court has a duty to screen out a habeas corpus petition which is meritless on its face." *Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition." Rules Governing Section 2254 Proceedings, Rule 4. For the reasons discussed above, Shofner's petition is untimely and not subject to equitable tolling. The undersigned therefore **RECOMMENDS** that Shofner's habeas petition (D.E. 1) be **DISMISSED** upon initial review.

13

Typically, before recommending dismissal on procedural grounds, the Court grants the petitioner a further opportunity to respond to "accord the parties fair notice and an opportunity to present their positions." *Day v. McDonough*, 547 U.S. 198, 210 (2006); *accord Shelton v. United States*, 800 F.3d 292, 294 (6th Cir. 2015). "The long-standing general rule is that a court may not dismiss an action without providing the adversely affected party with notice and an opportunity to be heard." *Acosta v. Artuz*, 221 F.3d 117, 124 (2d Cir. 2000).

In this case, Shofner will have the opportunity to further address timeliness and equitable tolling by filing any appropriate objections to this Recommended Disposition. The Sixth Circuit in *Shelton* recognized that a petitioner's opportunity to object to a Magistrate Judge's Recommended Disposition satisfies the notice requirement. *Shelton*, 800 F.3d at 295.

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See also* Rule 11 of the Rules Governing Section 2254 proceedings. When a case is dismissed on procedural grounds, a Certificate may only issue if the movant can show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the record is clear that Shofner's claims are untimely. No reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

Any objection to, or argument against, denial of the § 2254 motion must be asserted properly and in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition,

issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, **by the District Judge**. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 16th day of April, 2020.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge